**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

PAUL BUTNER,

                Plaintiff,

vs.                                    Case No. 3:15-cv-25-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Paul Butner ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "glaucoma," "back condition," "degenerative," "deaf in left ear," and "right knee tears." Transcript of Administrative Proceedings (Doc. No. 17; "Tr." or "administrative transcript"), filed April 6, 2015, at 168 (capitalization and emphasis omitted). On June 10, 2010, Plaintiff protectively filed applications for DIB and SSI, alleging an onset disability date of August 21, 2009 and October 12, 2009, respectively. Tr. at 129-30 (DIB), 133-39 (SSI). Plaintiff's "protective filing date" is listed elsewhere in the administrative transcript as May 26, 2010. See Tr. at 164. Plaintiff's applications were denied initially, see Tr. at 61, 75-77 (DIB), 63, 78-79 (SSI), and upon reconsideration, see Tr. at 67, 89-90 (DIB), 69, 84-88 (SSI).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 16), filed April 6, 2015; Reference Order (Doc. No. 18), entered April 7, 2015.

On March 15, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 28-60. On June 26, 2013, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claims. Tr. at 11-22. Plaintiff then requested review by the Appeals Council, Tr. at 7, and submitted evidence to the Council in the form of a brief authored by his attorney representative and medical records of Joseph J. Warner, M.D.,Tr. at 5; see Tr. at 218-23 (representative's brief), 407-30 (medical records). On November 7, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 1-5, thereby making the ALJ's Decision the final decision of the Commissioner. On January 12, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g) and § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: whether "[t]he ALJ improperly evaluated the medical evidence in this case"; and whether "[t]he ALJ erred by not assigning appropriate weight to the opinions of the physicians in this case." Plaintiff's Memorandum in Support of Complaint (Doc. No. 21; "Pl.'s Mem."), filed April 9, 2015, at 5-9 (capitalization and emphasis omitted). On August 5, 2015, Defendant responded by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem.").

After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 13-22.  At step one, the ALJ noted that Plaintiff "worked after the alleged onset date but this work activity did not rise to the level of substantial gainful activity."  Tr. at 13.  Accordingly, the ALJ found at step one that Plaintiff "has not engaged in substantial gainful activity since August 21, 2009, the alleged onset date."  Tr. at 13 (emphasis and citations omitted).  At step two, the ALJ found Plaintiff "has the following severe impairments: disorders of the spine, disorders of the right knee, right eye blindness and glaucoma."  Tr. at 13 (emphasis and citations omitted).  The ALJ further found at step two that "[Plaintiff] has the following non-severe impairment: left ear deafness."  Tr. at 14.  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one

---

[2]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 14 (emphasis and citations omitted).

The ALJ determined Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform less that (sic) the full range of light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except no more than occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, crawling; no climbing of ladders, ropes and scaffolds; no concentrated exposure to extreme cold or hazards (machinery, heights, etc.). [Plaintiff] is limited to jobs that do not require depth perception[.]

Tr. at 14 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as "construction I." Tr. at 20-21 (some emphasis, citation and capitalization omitted). At step five, after considering Plaintiff's age ("45 years old . . . on the alleged disability onset date"), education ("limited"), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 21 (emphasis and citations omitted), including "Warehouse Checker," "Dining Room Attendant," and "Night Cleaner." Tr. at 22. The ALJ concluded that Plaintiff "has not been under a disability . . . from August 21, 2009, through the date of th[e D]ecision." Tr. at 22 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard

is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff first contends the ALJ improperly evaluated the medical evidence of Dr. Warner and Lulu Amomman, M.D. Regarding Dr. Warner, Plaintiff challenges the ALJ's statement that the treating doctor's opinions are "not well supported by examination findings." Pl.'s Mem. at 5-7; see Tr. at 19. As for Dr. Amomman, Plaintiff submits that the ALJ's reliance on this consulting examiner's opinions is flawed because the doctor did not view multiple relevant diagnostic tests regarding Plaintiff's lower back. Pl.'s Mem. at 5-7. In his second issue, Plaintiff urges the ALJ erred in failing to state what weight she attributed to the opinions of Dr. Warner. Id. at 8-9. Because the arguments are interrelated, both issues are discussed together below.

### A. Medical Opinions

    1. Dr. Warner

Plaintiff treated with Dr. Warner at least nine times between June 2012 and March 2013. Tr. at 284-88, 357-78. Plaintiff saw Dr. Warner another four times between April and July 2013. Tr. at 407-30. These later records were not before the ALJ, but rather were submitted by Plaintiff to the Appeals Council.[3]  See Tr. at 5.

In Plaintiff's visit of June 4, 2012, Dr. Warner documented Plaintiff's lumbar disc disease with bilateral lower extremity "radiating down both feet." Tr. at 370. He further noted positive sciatic nerve, "Rt leg numbness" and "R leg weakness". Tr. 370.

Plaintiff visited Dr. Warner seven more times between June 27, 2012 and January 7, 2013, with continued similar complaints. In Plaintiff's visits of June 27, July 24, and August 21, 2012, Dr. Warner documents Plaintiff's lumbar disc disease and leg pain. Tr. 363-67. In his September 18, 2012 visit, Plaintiff reported "sharp pain in [b]ack that [r]adiates down [r]ight leg." Tr. at 361. In the notes of Plaintiff's November 12, 2012 visit, his lumbar and cervical disc disease is again documented. Tr. at 360. Plaintiff presented to Dr. Warner on December 10, 2012 and on January 7, 2013, with continued complaints of low back pain. Tr. at 357-58.

In Plaintiff's March 5, 2013 visit with Dr. Warner, the doctor noted Plaintiff had complaints of lumbar pain with numbness radiating down both legs. Tr. at 377, 423.

On March 13, 2013, Dr. Warner completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) in which he indicated that Plaintiff can occasionally lift twenty pounds and frequently lift less than ten pounds; Plaintiff can stand or walk at least two hours in an eight-hour day; he can sit and stand a total of eight hours in a day with

---

[3] Copies of the treatment notes from the March 5, 2013 visit are contained in both the records presented to the ALJ as well as those to the AC. See Tr. 377-78, 423-24

standing/walking less than four hours per day and with the need to periodically alternate sitting and standing; he is limited in pushing and pulling with his lower and upper extremities; he can occasionally climb, kneel, and stoop, but can never balance, crouch or crawl; he is limited to only occasionally reaching in all directions; he is limited in seeing due to blindness in his right eye; he can have limited exposure to temperatures, dust, vibration, humidity, heights, and fumes. Tr. at 284-88.

On April 3, 2013, Plaintiff reported "feeling bad today, very sore, pain level [at] 8 today." Tr. at 419. In his July 3, 2013 progress note, Dr. Warner referenced Plaintiff's "2mm x 4mm herniated disc [at] L-3 - L[-]4." Tr. 412. Plaintiff treated with Dr. Warner on July 31, 2013, for lumbar disc disease and cervical spondylosis. Tr. at 408-09. His pain level was a 7 on a 1-10 scale, his blood pressure was elevated a little, but he was "feeling well otherwise." Tr. at 408.

2. Dr. Amomman

Plaintiff saw Dr. Amomman on November 19, 2011, for a one-time consultative disability evaluation. Tr. at 271-75. Dr. Amomman noted that the disability allegations included "back condition, right knee pain, deaf in left ear and glaucoma." Tr. at 272. Regarding Plaintiff's allegations of back pain, the doctor documented a history of

> back problem since 1997, steel crane dropped onto [Plaintiff's] back when he did salvage work. His right arm and ribs broke. He has pain in middle and lower back. It is constant pain. He has bad sciatica. His legs go numb. No bladder or bowel incontinence. He sometimes uses a cane when back pain get[s] bad.

Tr. at 272.

Upon physical exam of Plaintiff, Dr. Amomman noted that "[a]mbulation is normal. He walks into the exam room without difficulty, without an assistive device. He sits down and

-7-

gets up out of chair without assistance. He gets up and off exam table with moderate difficulty, without assistance. He can dress and undress himself." Tr. at 273. Exam of Plaintiff's spine and extremities revealed "[p]eripheral pulses are 2+ bilaterally. No edema or cyanosis or clubbing noted. Mild tenderness along the right mid lumbar spine. Right mid lumbar paravertebral muscle spasm noted." Tr. at 274. Dr. Amomman's report references the findings from the June 6, 2011 x-ray of the lumbar spine and the August 26, 2009 MRI of the right knee. Tr. at 274. Dr. Amomman's impression included "[b]ack condition–degenerative disc disease L4-5, Grade I spondylolisthesis with spondylosis." Tr. at 275. Dr. Amomman concluded Plaintiff "had no functional limitation noted today." Tr. at 275.

Pertinent to Plaintiff's arguments, the report of Dr. Amomman makes no reference to the August 26, 2009 MRI of the lumbar spine, see Tr. 255-56,[4] or the June 6, 2011 CT scan of the lumbar spine, see Tr. at 248-49, 314-15 (duplicate). Additionally, Dr. Amomman did not have the benefit of subsequent diagnostic testing, including July 18, 2012 x-rays of the lumbar spine, see Tr. at 293, and a July 19, 2012 CT scan of the lumbar spine, see Tr. at 294-95.[5]

**B. Applicable Law**

---

[4] This report appears multiple times in the administrative transcript. See Tr. at 240, 321-22, and 384-85.

[5] Plaintiff claims there was a June 6, 2011 MRI of the lumbar spine that Dr. Amomman did not review, but the record citation provided for this report appears to be that of the lumbar x-rays taken on that same date. See Pl.'s Mem. at 6 (referring to Tr. at 247).

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

---

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[7] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same

-10-

time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

**C. Analysis**

Plaintiff submits that the ALJ erred in failing to state what weight she gave to the opinions of treating physician, Dr. Warner. Regarding Dr. Warner's opinions, the ALJ wrote as follows:

> As for the opinion evidence, on March 21, 2013, which was after the hearing, [Plaintiff's] representative submitted a medical source statement from Dr. Warner indicating that [Plaintiff] had a light residual functional capacity including limitations for alternating sitting, limited upper extremity ability for push and pull operations, restricting balancing, crouching, and crawling, and limiting reaching in all directions. Dr. Warner reported that [Plaintiff] has loss of peripheral vision in OS. Dr. Warner also included environmental limitations restricting temperature extremes, dusts, vibrations, heights, and pulmonary irritants. I find the limitations from Dr. Warner are not well supported by examination findings. If [Plaintiff] were this limited then I would have expected that Dr. Amonmmam's

-11-

> (sic) CE would have identified similar limits. Dr. Warner initially saw [Plaintiff] in June 2012 and overall, [Plaintiff] advised Dr. Warner that his medications were working well. Furthermore, Dr. Warner reported that he was relying on "nerve root compression" for the assessed limitations, and this has not been established by any of the diagnostic test results. Dr. Warner's MSS is not well-supported by the objective medical findings. In reviewing Dr. Warner's treatment notes as well as the entire medical record, the only evidence of impairment exacerbation was during a July 2012 ER visit for bicycle injuries and diagnostic test results did not reveal any lumbar spine changes since prior testing.

Tr. at 19 (citations omitted). Plaintiff is correct that the ALJ failed to state what weight she attributed to Dr. Warner's opinion. The Commissioner contends that the ALJ's opinion was not unclear and it could be reasonably inferred that she gave little weight to the opinions of Dr. Warner in light of her statement that she gave great weight to the opinion of Girija Padmanabh, M.D.[8] Def.'s Mem. at 10 (referring to Tr. at 20). However, that is not the standard. In this Circuit, the ALJ must state with *particularity* the weight given to different medical opinions and the reasons therefor." Winschel, 631 F. 3d at 1179 (citations omitted) (emphasis added). Notwithstanding, if the ALJ's error does not affect the ultimate findings and the decision is supported by substantial evidence, a reviewing court may find the error to be harmless, and that the decision should be affirmed. See Tillman v. Comm'r, Soc. Sec. Admin., 559 F. App'x 975, (11th Cir. 2014) (citing Diorio v. Heckler, 721 F.2d 726 (11th Cir. 1983)). Thus, the issue becomes whether the Decision here is otherwise supported by substantial evidence. Based upon a review of the Decision and the administrative transcript, including those records submitted to the AC, the Court finds that it is not.

The ALJ did not articulate what weight she attributed Dr. Warner's opinion, but based upon certain statements in the Decision, it is apparent she affords it little weight. See Tr. at

---

[8] Dr. Padmanabh is a medical consultant who completed a Physical Residual Functional Capacity Assessment regarding Plaintiff on December 5, 2011. Tr. 276-83.

19. Specifically, in her Decision she stated that "the limitations from Dr. Warner are not well supported by examination findings" [and] "Dr. Warner's MSS is not well-supported by the objective medical findings." Tr. at 19. However, the ALJ's reference to "examination findings" and "objective medical findings" is vague. Dr. Warner is a treating physician. When an ALJ concludes that a medical opinion of a treating physician should be given less than substantial weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis, 125 F.3d at 1440.

First, the ALJ's reliance on the consultative exam of Dr. Amomman to discount Dr. Warner's opinion is not well-founded. The ALJ discounted the opinion of Dr. Warner "not [being] well supported by examination findings" on the basis that "if [Plaintiff] were this limited then I would have expected that Dr. [Amommam's] CE would have identified similar limits." Tr. at 19. Dr. Amomman's exam of the Plaintiff was a one-time consultation and the doctor noted that the findings of no functional limitations was based upon the Plaintiff's condition on the date of the exam. See Tr. at 275. Moreover, it is difficult for the undersigned to ascertain whether this reasoning constitutes good cause given that Dr. Amomman had not reviewed certain relevant diagnostic testing regarding Plaintiff's lower back. As noted above, Dr. Amomman's report references a June 6, 2011 x-ray of the lumbar spine and an August 26, 2009 MRI of the right knee. Tr. at 274. However, the report makes no reference to the August 26, 2009 MRI of Plaintiff's lower back, nor the June 6, 2011 CT scan of the lumbar spine. Thus, judicial review is frustrated because the Court cannot determine whether Dr. Amomman's opinion and the ALJ's reliance on it were rational and supported by substantial evidence.

Second, the ALJ stated that "Dr. Warner reported that he was relying on 'nerve root compression' for the assessed limitations, and this ha[d] not been established by any of the diagnostic test results." Tr. at 19. The ALJ does not state which diagnostic tests contradict Dr. Warner's opinion. Rather, in support of this statement, the ALJ generally cites to Exhibits 5F, 10F, and 12F.[9] A review of the Flagler Hospital records (Exhibit 5F) reveals Plaintiff was diagnosed with "[l]umbar [r]adiculopathy: [s]pondylolisthesis -L4-L5". Tr. at 243. The record further documents "calf tenderness, numbness, swelling." Tr. at 243. Also contained in these records is an interpretation of the 2011 lumbar CT scan which revealed "prominent DDD L4-L5 progressed since 2009. L4-L5 spondililisthesis and spondylosis at least mild spinal stenosis at L4-L5. Schmorl's nodes multiple levels." Tr. at 245. (some capitalization omitted).

The emergency room records from Flagler Hospital (Exhibit 10F) included a report of an x-ray of the Plaintiff's lumbar spine dated July 18, 2012. Tr. at 293. The x-ray revealed: "At L4-5, there is grade I spondylolisthesis as well as bilateral spondylolysis. That disc is moderately narrowed with associated sclerosis and osteophyte formation. Mild osteophytes at other disc levels." Tr. at 293. A CT scan of the lumbar spine taken the next day revealed:

> the presence of moderate to severe degenerative disc disease at L4-5 with an associated grade I-II spondylolithesis at L4 on L5 secondary to the presence of bilateral spondylolysis. There is much milder degenerative disc disease elsewhere throughout the lumbar region. There are Schmorl's nodes involving the inferior endplates of the L1 and L2 vertebrae and the superior endplate of the L3 vertebral body. All of the lumbar vetebral body heights are well preserved. There is mild facet arthropathy bilaterally at L3-4 and L4-5. The remainder of the facet joints are well preserved. There is mild to moderate

---

[9] Exhibit 5F are the records from Flagler Hospital. Tr. at 242-65. Exhibit 10F are the records from the emergency room at Flagler Hospital. Tr. at 289-354. Exhibit 12F are the records of Dr. Ulysses Findley. Tr. at 391-406.

      sagittal stenosis of the spinal canal at L4-5.  The remainder of spinal canal is
      of adequate size.

Tr. at 294.  The impression of the scan further noted "mild neural foraminal narrowing worse on the right side at that level as well."   Tr. at 294.

    The ALJ also cited to the records of Dr. Ulysses Findley (Exhibit 12F).  Tr. at 389-406.  The majority of the hand-written notes of these records is illegible.  <u>See</u>, <u>e.g.</u>, Tr. 395-402.  The Medical Source Statement of Ability to Do Work-Related Activities form completed by Dr. Findley assessed significantly greater limitations than those of the ALJ and appears to support a finding of disabled.  Tr. 391-94.  The Findley records contain a copy of the Flagler Hospital report of the lumbar MRI of 2009, Tr. 403-04, which documented the following conclusions:

      1.    Scattered mild central spinal stenotic changes related to disc bulging and facet arthritic changes with ligamentum flava redundancy.
      2.    Bilateral bony foraminal narrowing at L4-L5 related to disc bulging, facet encroachment, and complicated by the anterior subluxation of L4 on L5.
      3.    Known spondylolysis of L4.
      4.    Anterior subluxation of L4 on L5 which has progressed compared to 4-8-06.

Tr. at 403.  Thus, the records cited by the ALJ actually support that Plaintiff had radicular symptoms and pain.

    Lastly, the ALJ did not have the later medical records of Dr. Warner at the time of her Decision.  <u>See</u> Tr. at 23-26.  These records were submitted to the Appeals Council.  Tr. at 4.  As noted previously, the record of the July 3, 2013 visit documents Plaintiff's "2mm x 4mm [h]erniated disc [at] L-3 - L4."  Tr. at 412.  When a plaintiff submits additional evidence to the AC, the reviewing court must evaluate the record as a whole, including the evidence submitted to the AC, to determine whether substantial evidence supports the ALJ's decision.

Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1262 (11th Cir. 2007). These records do not provide support for the ALJ's conclusions.

For the foregoing reasons, reversal and remand is required for further consideration of the opinions of treating physician Dr. Warner and to articulate the weight the Commissioner attributes to his opinions and the reasons therefor.

## V. Conclusion

After due consideration, it is

**ORDERED**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (A) Reconsider the opinions of Dr. Warner, clearly state the weight assigned to them, and articulate the reasons therefor; and

    (B) Take such other action as may be necessary to resolve these claims properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on February 18, 2016.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jde
copies:
counsel of record